**SIDLEY AUSTIN LLP**
Randi W. Singer (SBN 320587)
randi.singer@sidley.com
Elizabeth K. McLean (*pro hac vice forthcoming*)
elizabeth.mclean@sidley.com
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300

Nima H. Mohebbi (SBN 275453)
nima.mohebbi@sidley.com
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500

*Attorneys for Plaintiffs Jika, Inc. d/b/a Skio and Recharge LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIKA, INC. d/b/a SKIO, a Delaware corporation, and RECHARGE LLC, a Delaware limited liability company,<br><br>    Plaintiffs,<br><br>   v.<br><br>LOOP SOLUTIONS, INC., a Delaware corporation,<br><br>    Defendant. | Case No.: 2:26-cv-05530<br><br>**COMPLAINT FOR:**<br><br>(1) FALSE ADVERTISING (15 U.S.C. § 1125(a));<br>(2) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS;<br>(3) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;<br>(4) UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200);<br>(5) FALSE ADVERTISING (CAL. BUS. & PROF. CODE § 17500 et seq.);<br>(6) TRADE LIBEL<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiffs Jika, Inc. d/b/a Skio ("Skio") and Recharge LLC ("Recharge"), by and through their attorneys, allege as follows for their Complaint against Defendant Loop Solutions, Inc. ("Loop"):

## NATURE OF THE ACTION

1.     Within days of Recharge's $105 million acquisition of Skio, Defendant Loop launched a coordinated false-advertising campaign to lure away Skio's merchants by convincing them that Skio was on its way out.  It is not.  Defendant blanketed its website loopwork.co with a takeover banner declaring "Your choice just got simpler: Loop or Recharge," writing Skio out of the market by editorial fiat even though Skio continues to operate as a standalone product. Defendant published feature-comparison pages built on fabrications, including a side-by-side grid with false statements about Skio's capabilities and product offerings. Defendant unleashed an email campaign engineered to create the false impression of a mass merchant exodus from Skio. And Defendant tells merchants, as if it were established fact, that Skio will be "sunset," that Skio's support will deteriorate, and that Skio's pricing will rise.  None of that is happening.  None of it will.  Plaintiffs Skio and Recharge bring this action to halt Loop's ongoing campaign of deception, repair the harm it has already caused, and protect the merchants Loop continues to mislead.

2.     Skio is a subscription-commerce software platform that enables Shopify merchants to place a "subscribe and save" widget on their product pages so a shopper can choose to subscribe rather than make a one-time purchase at checkout. Skio's platform allows merchants to operate recurring-purchase programs with features such as subscriber acquisition, recurring billing, a branded customer self-service portal, cancellation-prevention flows, and subscriber analytics. Skio was recently acquired by Recharge, a leading subscription service platform.  Loop offers a competing subscription management app for Shopify merchants.

3.     Defendant's campaign has caused, and continues to cause, irreparable harm to Skio and Recharge. By directing materially false statements at Skio's

1

COMPLAINT

merchant base, at the precise moment merchants are most susceptible to them, Defendant has triggered a wave of customer uncertainty, attrition, and competitive losses that monetary damages alone cannot remedy.

## **JURISDICTION AND VENUE**

4.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action includes a claim for false and deceptive advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and pursuant to 15 U.S.C. § 1121, which expressly provides that federal courts have jurisdiction over claims arising under the Lanham Act.

5.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a) because those claims are joined with and are part of the same case or controversy as Plaintiffs' federal Lanham Act claim, and all claims arise out of a common nucleus of operative facts.

6.     This Court has personal jurisdiction over Loop pursuant to § 410.10 of the California Code of Civil Procedure and the Due Process Clause of the United States Constitution.  Loop transacts business in this District, including by selling and marketing products to companies in this district such as Four Sigmatic Foods, Inc., Lumin Skin, OSEA Malibu, The Smoo Co LLC, Angela Caglia Skincare, and the Patch Brand.  Loop has also intentionally committed tortious acts within this District by falsely advertising and making material misrepresentations of fact expressly aimed at residents of the Central District of California, causing harm that Loop knew would be felt in the forum state.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District. Plaintiff Recharge and Plaintiff Skio are headquartered and have their principal places of business in Santa Monica, California, which is within the Central District of California. Loop has directed and continues to direct its false and

2

deceptive commercial communications at Skio and Recharge customers, many of whom are located within this District. The harm caused by Loop's false and deceptive campaign is felt substantially within this District.

**PARTIES**

8.     Plaintiff Jika, Inc. d/b/a Skio ("Skio") is a Delaware corporation with its principal place of business at 1507 20th Street, Santa Monica, California 90404. Skio is a wholly-owned subsidiary of Recharge. Skio operates a subscription-commerce software platform for Shopify merchants, distinguished by its reputation for rapid product innovation and hands-on merchant support. Skio serves a substantial base of loyal Shopify merchants, including high-growth direct-to-consumer ("DTC") brands.

9.     Plaintiff Recharge LLC ("Recharge") is a Delaware limited liability company with its principal place of business at 1507 20th Street, Santa Monica, California 90404. Recharge operates one of the leading subscription commerce platforms for Shopify merchants, providing tools for subscription management, recurring billing, subscriber acquisition, customer portals, retention, and analytics. Recharge serves thousands of DTC merchants and processes substantial subscription revenue on behalf of its customers.

10.     On information and belief, Defendant Loop Solutions, Inc. ("Loop") is a Delaware corporation and maintains a principal address at 1401 21st Street, Ste R, Sacramento, California, 95811. Loop operates a competing Shopify subscription app under the trade name "Loop Subscriptions" at loopwork.co and transacts extensive business in California and throughout the United States by marketing and selling its competing subscription platform to Shopify merchants in this State and nationwide.

COMPLAINT

## FACTUAL BACKGROUND

### A.   Skio and its Subscription Management Platform

11.   Skio is a subscription management platform founded in 2021 and purpose-built by world-class engineers for Shopify merchants.  Skio has established itself as a leading independent subscription platform for high-growth Shopify brands.

12.   Skio's platform provides merchants with an all-in-one subscription commerce suite that seamlessly integrates with Shopify's native checkout and subscription APIs. Skio's features are designed to work together in a unified, easy-to-use platform, allowing merchants to manage subscriber acquisition, customer self-service, retention, upsells, analytics, and recurring billing without relying on disconnected tools or complex workarounds. Its core features include: (a) a no-code customer self-service portal; (b) passwordless subscriber login via SMS or email; (c) Build-a-Box bundle customization; (d) automated subscriber journey workflows, including welcome flows, upsells, and win-back sequences; (e) multi-step cancellation flows designed to convert cancellations into pauses or product swaps; (f) one-click checkout via Shopify's native checkout, including Shop Pay; and (g) real-time analytics, including monthly recurring revenue (MRR) and average order value tracking. Skio's platform has also supported merchants' geographic expansion by enabling subscription programs to scale across markets while maintaining a consistent, user-friendly experience for both merchants and subscribers.

13.   Skio's technology enables the merchant to charge the subscriber's card on the right schedule, retry failed payments, and prompt for card updates when cards expire.  Subscribers can click a link in an email and access an account page that allows them to skip a shipment, swap a product, change frequency, update their address, or cancel without having to email customer support or enter a password. Skio also offers merchants a configurable flow so that when a subscriber clicks "cancel", the merchant can offer discounts, free gifts, pauses, product swaps, or different frequencies to try to keep them.  Merchants have access to dashboards that

4

provide information about their subscriptions, including how subscriptions are growing, what the churn rates are, and which cancellation offers are working.

14.    Since its founding, Skio has grown to serve more than 1,000 subscription brands, and its merchant base includes well-known brands such as Bulletproof, GHOST, Liquid I.V., Milk Bar, True Botanicals, KITSCH, Magic Mind, Raw Nutrition, Siete Foods, Medterra CBD, Ancestral Supplements, and mindbodygreen, among hundreds of others. Skio's customers operate recurring-purchase programs that depend on Skio's platform for their subscription revenue, subscriber retention, and customer experience.

**B.    Recharge's Acquisition of Skio**

15.    On or about April 30, 2026, Recharge publicly announced its acquisition of Skio (Jika, Inc.) for approximately $105 million.

16.    Skio and Recharge have both confirmed publicly and in writing that following the acquisition there are no plans to sunset, wind down, or discontinue the Skio platform and that: (a) Skio will continue to operate as a standalone product; (b) Skio customers will not be forced to migrate to the Recharge platform; (c) Skio customers will keep their customer success managers and continue to have access to Skio's best-in-class support team; (d) pricing will not be adjusted; and (e) Skio will continue to ship features to help its customers acquire and retain subscribers through at least 2028.  *See* Ex. 1 (Recharge Blog Post, "Recharge welcomes Skio to build the future of subscription commerce" (April 2026)); Ex. 2 (Skio Blog Post, "The Best Teams in Subscriptions, Together" (April 30, 2026)); Ex. 3 (A. Thibodeaux LinkedIn Post (posted May 2026)).

17.    In April 2026, Recharge published a blog post on its website confirming "Recharge and Skio will continue to operate as they have." On April 30, 2026, Skio also published a blog post confirming both platforms will be preserved while the teams "figure out the best path forward." Skio's then-Chief Executive Officer Aidan

Thibodeaux personally authored a post in May 2026 regarding the acquisition on his LinkedIn profile as well. *Id.*

**C.     Loop, Its Competing Platform, and History of False and Deceptive Marketing Against Recharge**

18.     Loop Solutions, Inc. operates a subscription management application for Shopify merchants under the trade name "Loop Subscriptions" at loopwork.co. Loop directly competes with Skio and Recharge for the subscription platform business of Shopify merchants, offering overlapping tools for recurring billing, subscriber management, cancellation retention, and customer portal functionality.

19.     On information and belief, diverting Skio and Recharge merchants and migrating them to Loop's platform is a central component of Loop's commercial strategy.  Currently, Loop's website has pages specifically dedicated to "customer success stories," which assert that particular customers migrated from Recharge or Skio to Loop.  *See* Ex. 4.

20.     Since at least August 2022, Recharge has sent Loop seven cease-and-desist letters and takedown demands documenting specific false statements in Loop's commercial communications about Recharge and demanding correction: on August 24, 2022; November 15, 2022; January 31, 2023; August 15, 2023; October 31, 2024; April 28, 2025; and April 7, 2026. In response to each letter, Defendant made partial corrections to the specific statements Recharge identified but did not retract any of those statements and consistently resumed false and deceptive marketing about Recharge in revised form, across new channels and new product comparisons. Defendant's response to non-judicial remediation has been to absorb the cost of a partial correction and continue the underlying conduct. Defendant's pattern of false marketing has persisted.

**D.     Loop's False and Deceptive Post-Acquisition Campaign**

21.     Now, Loop has trained its efforts on Skio. Within days of the acquisition announcement, Loop launched a coordinated, multi-channel false and

deceptive advertising campaign targeting Skio's customers in an apparent effort to inveigle them away. The campaign includes banner ads, direct outreach to Skio customers, a blog post containing false representations concerning Recharge's acquisition of Skio, direct side-by-side comparisons of Skio and Loop that contain extensive false statements and misrepresentations about the capabilities and qualities of the Skio product, and sponsored posts on LinkedIn.

22. On May 8, 2026, Recharge sent Loop a cease-and-desist letter demanding that Loop discontinue its false email marketing campaign directed at Skio's customer base.

23. On May 8, 2026, Piyush Jain, the CEO of Loop, emailed Recharge stating that he had "already asked the team to pause" the false advertising campaign and later confirmed on a May 12, 2026 phone call with Recharge that the false advertising would stop. It did not.

24. On May 13, 2026, outside counsel for Recharge followed up with a letter informing Loop that Recharge is considering litigation and demanding that Loop retain all documents and communications relevant to its false advertising campaign.

### 1. The False and Deceptive Banner

25. On information and belief, within days of Recharge's announcement regarding its acquisition of Skio, Loop released a site-wide banner (the "Acquisition Banner"), which stated "Recharge acquired Skio for $105M. Loop is now the second largest Shopify subscription app. Your choice just got simpler: **Loop or Recharge. Book your priority migration slot.**" *See* Ex. 5, last accessed on May 14, 2026, image below:

COMPLAINT

On information and belief, the banner appeared on Loop's blog posts.

26.     The Acquisition Banner is literally false because Skio is still available as an alternative to Recharge and Loop, and there are no plans to deprecate its service.   Skio and Recharge have publicly confirmed that both platforms will continue to operate as normal.

### 2.     The False and Deceptive Targeted Outreach Initiative

27.     Beginning in May, Loop initiated a coordinated targeted outreach to Skio's customers that included false and deceptive representations about the post-acquisition trajectory of Skio's platform, pricing, support, and features. On information and belief, multiple Loop representatives contacted Skio merchants with consistent false messages designed to induce them to leave Skio and migrate to Loop. Representative examples include the following communications:

28.     On May 7, 2026, a Loop representative identified as "Emma" (emma@mailfromloop.com) sent an email to a Skio customer with the subject line "Back to square one for your platform future."  *See* Ex. 6 (Email from Emma to Skio Customer, May 7, 2026).



The email contained the following false and deceptive representations:

(a)     **"Back to square one for your platform future"**: the subject line of the email falsely communicates that Recharge's acquisition of Skio has rendered

Skio's platform unreliable, unstable, or discontinued, when in fact Skio continues to operate normally and without disruption;

(b)     **"a couple of Skio customers have already started migrating"**: a false statement of fact designed to create the false impression of an ongoing customer exodus from Skio; and

(c)     **"They're not waiting around"**: unsubstantiated language calculated to induce urgency and panic in Skio customers.

29.     On May 6, 2026, Harshit Gupta, a Loop sales representative who acknowledged that he was acting in coordination with "colleague Emma," sent the following message to a different Skio merchant. *See* Ex. 7 (message from Harshit to Skio Customer (May 6, 2026)).



Gupta's email contained the following false and deceptive representations about the post-acquisition future of Skio:

(a)     **"Whose roadmap wins? Skio's? ReCharge's? Features you use today could quietly get deprecated"**: this question is seemingly designed to raise a serious concern to Skio merchants that Skio product features will be eliminated or discontinued post-acquisition, although Skio expressly committed to keeping these features;

(b)     **"Your negotiated rate doesn't always survive a merger. Renegotiation usually shows up faster than you'd think"**: a call to action

9

based on the false premise that Skio customers' current pricing and negotiated rates will be increased or voided as a result of the acquisition, which is directly contrary to Recharge's confirmed plans;

(c)    **"Support and new feature requests usually slow down during a merger. The teams are heads-down on integration work, so day-to-day requests tend to wait a bit longer"**: a false representation that Skio's customer support quality will deteriorate post-acquisition, for which Loop has no factual basis; and

(d)    **"The CSM you've built rapport with might get reassigned"**: a baseless statement designed to destabilize customer confidence, which is directly contradicted by Skio's public statements that points of contact will not change.

30.    Each of the statements described above is false and creates the false impression that Skio customers face an imminent and material deterioration in platform quality, pricing, support, and continuity as a result of the acquisition. This is directly contrary to Plaintiffs' confirmed plans and public statements.

31.    Gupta also sent direct Slack messages to Skio customers using false statements about the acquisition to solicit business for Loop. *See* Ex. 8 (Slack Messages from Harshit Gupta to Skio Customer (May 8, 2026)).   In his initial message to one customer, Gupta stated: "with Skio getting acquired now, things are going to change a lot there, open to revisit loop?" In a follow-up message to that Skio merchant on May 8, 2026, Gupta presented a list of purported post-acquisition consequences under the heading "Based on general SaaS mergers, some common things happen." The Slack message contained the following false and deceptive representations about the post-acquisition future of Skio:

10

COMPLAINT

(a) **"CSMs gets reshuffled eventually"**: another false and baseless statement that Skio's customer success managers will be reassigned or displaced post-acquisition;

(b) **"Negotiated pricing gets renegotiated"**: a false statement that Skio customers' current pricing and negotiated rates will be voided or increased as a result of the acquisition, directly contrary to Plaintiffs' confirmed plans and public statements;

(c) **"Priority given to the brands change as the merger happens down the months"**: a false claim that Skio merchants will be deprioritized or receive diminished attention and resources following the acquisition, also directly contrary to Plaintiffs' assurances; and

(d) **"Features released and feature requests intake reduces/changes dramatically"**: a false representation that Skio's product development velocity and responsiveness to merchant feature requests will materially deteriorate post-acquisition, again contrary to Plaintiffs' guarantees.

32. Taken individually and together, the statements described above perpetuate Loop's false narrative regarding the acquisition; specifically, that Skio customers face an imminent and material deterioration in platform quality, pricing, support, and continuity. These statements are categorically false.

33. On May 11, 2026, another Skio customer informed Recharge that it had received unsolicited emails about Recharge's acquisition of Skio that, unlike the

11

COMPLAINT

Emma and Gupta communications discussed above, contained no identifying signatures, footers, or other disclosures indicating that the messages came from Loop. The merchant explained that the emails stated that Recharge bought Skio and that the sender wanted to get you started on migrating without ever disclosing that the sender was Loop or that the purpose of the outreach was to solicit the merchant's business for a competing business.  As a result, the customer initially believed the emails were coming from Recharge and called Recharge expressing concerns about Skio's post-acquisition future. The merchant was left confused about the source of the communication and asked whether Skio would continue to function as it does today or whether Skio customers would be migrated to Recharge's platform. Loop's campaign has demonstrably generated direct consumer confusion about the source of communications and Skio's future. *See* Ex. 9.

### 3.    The False and Deceptive Blog Post Targeting the Acquisition

34.    Within days of the acquisition announcement, on May 8, 2026, Loop published a blog post at loopwork.co/blog/recharge-payments-vs-skio-subscriptions (the "Loop Blog Post").  *See* Ex. 5.  The Loop Blog Post targets Skio's customers with false and deceptive predictions and characterizations of Skio's post-acquisition trajectory, presented not as opinions or projections, but as the inevitable outcome here:

> *"Recharge's official position: both platforms continue to operate as normal. Nothing changes immediately. But here's what historically happens when a platform gets acquired by its largest competitor: The acquiring company says 'business as usual' for 6–12 months. Then feature roadmaps merge. Then pricing consolidates — usually upward. Then the smaller platform's app gets sunset or rolled into the acquirer's product." Id.*

35.    This passage is false and deceptive. Loop presents these outcomes as inevitable for Skio merchants, but they are directly contrary to Plaintiffs' confirmed plans.

12

COMPLAINT

36. This deception is compounded by the final statement of the original Loop Blog Post, which states, "If you're evaluating platforms for the first time: the decision just got simpler. It's Loop or Recharge." This is a literally false statement because Skio is still available as a standalone alternative to Recharge and Loop. Merchants are not limited to Loop or Recharge and can still choose Skio.

37. The original version of the Loop Blog Post also includes the false claim that "pricing escalation and support patterns documented in 116 one-star reviews…[have] gotten bigger." This is a false statement of fact asserting that Recharge has an established pattern of pricing escalation, which it does not. The statement also mischaracterizes Recharge's rating on the Shopify App Store, which is currently 4.8 across 2,146 reviews.

38. The original version of the Loop Blog Post further denigrates Recharge's customer support as "slow and unresponsive": "Will the small, responsive support team that Skio reviewers praised remain intact — or get absorbed into Recharge's support infrastructure, which its own reviewers have documented as slow and unresponsive?" *Id.* Loop presents unspecified opinions of a handful of consumers as though they are an established and documented fact, which they are not.

39. The original version of the Loop Blog Post likewise states that the acquisition placed Skio in the hands of "the competitor most Skio brands were specifically trying to avoid," a false and deceptive characterization of Skio customers' motivations designed to alarm Skio customers about the future of the platform and to undermine Plaintiffs' assurances that Skio would continue to operate as a standalone product. *Id.*

40. On May 16, 2026, after receiving the May 8, 2026 cease-and-desist letter from Recharge and the May 13, 2026 litigation hold letter, Loop revised the Loop Blog Post. *See* Ex. 10 (Loop Blog Post, "Recharge Just Acquired Skio for $105M. It's Loop or Recharge Now" (May 16, 2026)). The May 16, 2026 Loop Blog

Post still contains the false statement, "If you're evaluating platforms for the first time: The decision just got simpler. It's Loop or Recharge." *Id.*

41. Moreover, the revised Loop Blog Post contains additional false and deceptive statements that further Loop's false narrative regarding the deprecation of the Skio platform:

> *"Recharge's official position is that both platforms continue to operate as normal. Nothing changes immediately. And Skio's leadership has gone further - publicly committing to a "no change" guarantee through at least 2028: no forced migration to Recharge, no pricing adjustments, no change to the MSM and support team, continued feature development. It's a real commitment and worth acknowledging as one.*
>
> *But subscriptions aren't a 12 or 18-month business. The brands building serious subscription programs today are signing up for a stack they'll operate on for the next five, seven, ten years. A subscriber acquired in 2026 may still be on the program in 2031. The question that matters for a brand evaluating a subscription platform isn't only 'what happens next quarter' – it's "what does my subscription infrastructure look like across the lifetime of the customers I'm acquiring on it."*
>
> *That's where the post-2028 picture matters. Skio's own leadership has been candid about this - in their words, 'we don't know what Skio or Recharge or (maybe even) some new platform is gonna look like in a year and a half.' That's an honest acknowledgment, not a criticism. But it does mean that the long-term shape of the platform - what it's called, who runs it, how it's built - is genuinely unknown beyond the guarantee window." Id.*

42. Loop revised the post yet again on May 19, 2026. *See* Ex. 11. The May 19, 2026, Loop Blog Post continued to advance the same core message: that Recharge's acquisition of Skio means Skio "is now a Recharge product" so merchants should migrate to Loop. For example, the revised post states that "the long-term shape of the platform — what it's called, who runs it, how it's built — has not been publicly committed in either direction," and falsely tells merchants that "the

14

COMPLAINT

independent-platform shortlist is shorter than it was a month ago." *Id*. It also continues to promote Loop's migration services in a blatant attempt to ensnare Skio merchants. *Id*.

43.     Most recently, Loop revised the Loop Blog Post on May 20 and 21, 2026. *See* Exs. 12–13. These versions are substantively the same as the previous versions, maintaining that Skio "is now a Recharge product" and there is "uncertainty" following the acquisition. The blog warns Skio's customers: "Your day-to-day hasn't changed — but the window after an acquisition is when many brands take a closer look at the long-term shape of their platform stack." *Id*. As of the date of this complaint, Loop still presents Recharge's public position, i.e., that both platforms will continue to operate normally, as a prelude to an inevitable sequence of price increases and product discontinuation.

### 4.     The False and Deceptive Skio Comparison Page and Its False Comparison Tables

44.     On information and belief, in early May 2026, Loop posted a side-by-side feature comparison page at loopwork.co/compare/skio-alternative. The page purports to compare "Loop Pro" against the non-existent "Skio Dog Plan" across 59 feature rows organized into 11 categories: gamification flow, cancellation flow, dunning management, customer portal, manage subscriptions, upselling, bundle, AOV increase, acquire new subscribers, reduce business loss, and misc features (the "Skio Comparison Page"). *See* Ex. 14. (Loop, "The #1 Skio Subscription Alternative that costs 40% less," https://www.loopwork.co/compare/skio-alternative, last accessed May 17, 2026). A review of the Skio Comparison Page against Skio's own published product and pricing documentation reveals that it contains numerous false statements about Skio's product capabilities.  The table also refers to a Skio "Dog Plan," which is not among the current plans offered by Skio.  Among the most egregious specific false claims in Loop's comparison tables on this page are the following:

(a)  **Passwordless Login.**  Loop marks "Passwordless login via email" as unavailable for Skio (*X*) and available for Loop (✓). This is false. Passwordless login via email magic link or a standard 4-digit login code is the default authentication behavior of every Skio customer portal deployment, present since Skio's founding, and is marketed by Skio.

(b)  **One-Click Checkout with Exclusive Offers.**  Loop marks "One-click checkout with exclusive offers" as unavailable for Skio (*X*). This is false. Skio uses Shopify's native checkout, including Shop Pay one-click checkout, which is one of Skio's most prominently marketed competitive advantages and a reason many Shopify merchants selected Skio in the first place.

(c)  **OTP-less Quick Action Authentication.**  Loop marks "OTP-less quick action authentication" as unavailable for Skio (*X*). This is false. Skio's quick-action URLs use passwordless authentication by design, which is logically consistent with Skio's passwordless login feature. This claim is false by the same underlying facts that make claim (a) above false.

(d)  **Multiple Cancellation Flow Features.**  Loop marks as unavailable for Skio (*X*) multiple cancellation flow features including: (i) "Multiple benefits pages based on customer profile," which is false because Skio's cancellation flow supports conditional logic and audience segmentation; (ii) "Profile-based cancellation reason ordering" which is false because Skio supports conditional reason ordering through flow logic; (iii) "Personalized discount offers by profile" which is false because Skio supports profile-based conditional discount offers; and (iv) "Discount effectiveness analytics" which is false because Skio reports save-by-offer analytics in its cancellation flow reporting.

(e)  **PDP-specific subscription widgets.**  Loop marks "PDP-specific subscription widgets" as unavailable for Skio (*X*). This is false. Skio's

Plan Picker is automatically deployed on the product pages of every Skio merchant store, allowing shoppers to select a subscription directly from the product page before adding to cart.

(f) **Proactive card expiration alerts (7-30 days).** Loop marked "Proactive card expiration alerts" as unavailable for Skio (✗). This is false. Skio supports card-expiration notifications, which trigger when a customer's saved card is about to expire and can be used to power automated customer alerts before a renewal payment fails.

45. The false claims described above are not exhaustive and are not isolated errors. They are consistent with a pattern across the entire Skio Comparison Page and are part of a larger campaign to denigrate Skio's product offerings in a manner that is likely to confuse existing and prospective customers.

46. On information and belief, Loop also paid for advertising on LinkedIn at least as recently as May 16, 2026, stating, "Skio just got acquired. Your pricing, support, and everything else is up in the air." *See* Ex. 15 (Loop, LinkedIn Sponsored Post). Loop continued running the advertisement even after receiving Recharge's May 8, 2026, cease-and-desist letter.

47. On information and belief, Loop also continues to reach out to Skio merchants directly to perpetuate its false claims.

48. Loop's response to non-judicial remediation has consistently been to revise the surface of its commercial communications while continuing the underlying conduct. On May 8, 2026, the same day Recharge sent its cease-and-desist letter, Loop's Chief Executive Officer Piyush Jain represented to Recharge that he had "already asked the team to pause" the campaign and on May 12, 2026, Mr. Jain confirmed by telephone that the false advertising would stop. The false advertising did not stop. After Recharge's outside counsel sent a litigation hold letter on May 13, 2026, Loop revised the Loop Blog Post on May 16, May 19, May 20 and again on May 21, 2026, but each revision retained false statements about Skio's post-

17

acquisition trajectory. Loop continued running its public LinkedIn sponsored advertisement making false statements about the acquisition after receiving Recharge's May 8 cease-and-desist letter. And, on information and belief, Loop continues to reach out to Skio merchants directly to perpetuate its false claims. Loop's pattern of partial correction followed by continued false marketing in revised form, including after its Chief Executive Officer's express representations to Recharge and after Recharge's litigation hold letter, demonstrates that Loop will not cease disseminating its false and deceptive statements absent court-ordered relief.

### E.　Irreparable Harm to Plaintiffs and Need for Immediate Relief

49.　Loop's false and deceptive campaign has caused and continues to cause irreparable harm to Skio and Recharge. By disseminating false and deceptive statements about Skio's future stability, pricing, support quality, and product features to Skio's existing customer base, Loop has caused and continues to cause Skio merchants to question, reconsider, delay, or terminate their use of Skio's platform, resulting in actual and threatened loss of subscription revenues and customer relationships for Skio and Recharge.

50.　On information and belief, Skio and Recharge have lost customer relationships and subscription revenues as a direct and proximate result of Loop's false and deceptive campaign. In the mere weeks since the launch of Loop's false advertising campaign, Skio has already lost prospective and current customers to Loop, resulting in the loss of hundreds of thousands of dollars in annual revenue. These lost opportunities are just the start because merchants are reevaluating their platform options in the face of Loop's ongoing false advertising.

51.　Loop's campaign has also caused, and continues to cause, irreparable harm to Skio's and Recharge's goodwill and business reputations by falsely claiming that their products are unstable, that their pricing is about to increase, that their support is unreliable, and that their features are inferior to what they actually offer.

18

COMPLAINT

52.    Plaintiffs have no adequate remedy at law for the ongoing and prospective harm caused by Loop's false and deceptive campaign. Unless Loop is immediately enjoined from disseminating its false advertising across all channels, Plaintiffs will continue to suffer irreparable harm in the form of lost customer relationships, damage to goodwill and reputation, and continuing competitive injury that cannot be fully remedied by an award of damages alone. Each day Loop's campaign is allowed to continue, additional Skio customers and prospective customers are exposed to false and deceptive statements that cause confusion and influence critical purchasing decisions.

## CAUSES OF ACTION

### COUNT I

### False Advertising (15 U.S.C. § 1125(a))

53.    Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs as if fully set forth herein.

54.    Loop's false advertising, including without limitation the Acquisition Banner, targeted outreach, Loop Blog Post, and Skio Comparison Page at loopwork.co/compare/skio-alternative, constitutes commercial advertising and promotion within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Loop created, published, and disseminated these communications in commercial competition with Skio and Recharge, for the purpose of influencing prospective and current customers to migrate to Loop's competing platform.

55.    Loop's commercial communications, as described in this Complaint, contain false and deceptive statements of fact and create false and deceptive impressions about Skio's and Recharge's products, services, features, pricing, and business trajectory. These false and deceptive statements include, without limitation:

(a)    That Skio's platform will be sunset;

(b)    That Skio customers' current pricing and negotiated rates will be increased post-acquisition;

19

COMPLAINT

(c)    That Skio's customer support quality will deteriorate post-acquisition;

(d)    That Skio customer success managers will be reassigned;

(e)    That Skio product features will be deprecated;

(f)    That Skio is no longer a viable independent option;

(g)    That numerous specific Skio features are unavailable when they are actually available; and

(h)    That Skio does not offer passwordless login via email, a feature that is in fact marketed by Skio, present by default in every Skio deployment.

56.    The challenged statements are false because they necessarily convey that Skio customers face material post-acquisition disruption, including discontinuation, increased pricing, degraded support, reassigned customer success managers, and feature deprecation, and the intended audience recognizes them as the necessary takeaway from Loop's challenged communications. As alleged above, Plaintiffs publicly confirmed that no such post-acquisition changes are planned.

57.    Loop's false and deceptive statements actually deceived, or have a tendency to deceive, a substantial segment of their intended audience, namely current and prospective Skio and Recharge customers who received Loop's targeted communications and/or viewed the Acquisition Banner, targeted outreach, Skio Comparison Page, and the Loop Blog Post.

58.    Loop's false statements are material because they concern the stability, continuity, features, pricing, support quality, and product capabilities of the subscription commerce platforms that Skio and Recharge customers depend upon to operate their businesses. These statements are likely to influence, and have influenced, current and prospective Skio and Recharge customers' platform selection, retention, and migration decisions.

59.    Loop placed its false and deceptive statements in interstate commerce by disseminating them through targeted emails to Skio's customers and by publishing them on loopwork.co, a commercial website accessible nationwide and

20

COMPLAINT

used to market Loop's subscription-commerce platform to merchants throughout the United States.

60.    Loop's false and deceptive statements have caused, and are likely to continue causing, injury to Skio and Recharge, including loss of existing and prospective customers, diversion of sales and subscription revenues to Loop, diminution of goodwill, and harm to Plaintiffs' business reputations.

61.    Loop's false and deceptive statements were made willfully and with full knowledge of their falsity. Loop's own Blog Post demonstrates that knowledge: Loop expressly acknowledged Recharge's and Skio's public commitments that both platforms would continue to operate normally but nevertheless told merchants that Skio would sunset, renegotiate prices, reassign its customer support managers and deprecate its features.    Loop's willfulness is further demonstrated by the coordination and timing of its campaign: Loop launched its multi-channel outreach within days of the acquisition announcement, deploying multiple representatives to disseminate consistent false messages through email, Slack, and its commercial website at the precise moment Skio merchants would be most susceptible to such communications. Even after receiving Recharge's cease-and-desist letter on May 8, 2026, Loop continued to disseminate false and deceptive statements regarding Skio.

62.    Plaintiffs are entitled to: (a) preliminary and permanent injunctive relief; (b) disgorgement of Loop's profits attributable to its false and deceptive advertising; (c) compensatory damages; (d) enhanced damages based on Loop's willful conduct; and (e) reasonable attorneys' fees and costs, pursuant to 15  U.S.C. §§ 1116, 1117(a).

## COUNT II

### Tortious Interference with Contractual Relations (California Law)

63.    Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs as if fully set forth herein.

COMPLAINT

64. Skio and Recharge have existing contractual relationships, including subscription agreements, with their merchant-customers, who subscribe to and pay recurring fees for Recharge's and Skio's subscription commerce platforms.

65. On information and belief, Loop is aware of and has actual knowledge of Recharge's and Skio's existing customer contracts. This is evidenced by, among other things: Loop's targeted outreach to individuals and entities identified as Skio customers and Loop's own consumer "success stories," which track the migration of specific named merchants from Skio and Recharge to Loop.

66. Loop's dissemination of false and deceptive statements about Skio's post-acquisition stability, pricing, support, and features through its Acquisition Banner, targeted communications, Loop Blog Post, and Skio Comparison Page constitutes intentional acts specifically designed to induce breach or disruption of Recharge's and Skio's existing customer contracts.

67. Loop's conduct caused actual breach or disruption and will continue to cause actual breach or disruption of Recharge's and Skio's customer contracts.

68. As a direct and proximate result of Loop's tortious interference, Plaintiffs have suffered economic harm, including lost customers, lost renewals, lost subscription revenues, and damage to existing customer relationships.

69. To the extent any of Plaintiffs' customer contracts are terminable at will, Loop's interference was independently wrongful by means other than interference alone because Loop's conduct violated Section 43(a) of the Lanham Act, California Business & Professions Code §§ 17200 and 17500, and the California common law of trade libel, and constituted fraud or deceit directed at Plaintiffs' customers.

70. Plaintiffs seek all damages available at law, including compensatory damages and punitive damages for Loop's malicious, oppressive, and fraudulent conduct.

COMPLAINT

## COUNT III

**Tortious Interference with Prospective Economic Advantage (California Law)**

71.    Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs as if fully set forth herein.

72.    Plaintiffs Skio and Recharge each have economic relationships with current and prospective subscription-commerce customers that are reasonably likely to result in future economic benefit to Plaintiffs.

73.    Loop knew of Plaintiffs' economic relationships and market opportunities. This is evidenced by, among other things: Loop's targeted outreach to individuals and entities identified as Skio customers, Loop's prior false-marketing campaigns directed at Recharge and its merchants, and Loop's own consumer "success stories", which track the migration of specific named merchants from Skio and Recharge to Loop.

74.    Loop's dissemination of false and deceptive statements about Plaintiffs' platforms, pricing, support quality, features and post-acquisition trajectory through its coordinated Acquisition Banner, targeted emails, Loop Blog Post, and Skio Comparison Page and LinkedIn advertising constitutes intentional, wrongful acts specifically designed to disrupt Plaintiffs' prospective economic relationships and to prevent Plaintiffs from entering into new or continued customer relationships.

75.    Loop's acts are independently wrongful by means other than interference alone. They violate Section 43(a) of the Lanham Act, California Business & Professions Code §§ 17200 and 17500, and the California common law of trade libel, and constitute fraud and deceit directed at Plaintiffs' customers and prospective customers.

76.    Loop's wrongful conduct actually disrupted and will continue to disrupt Plaintiffs' prospective economic relationships.

23

COMPLAINT

77.   As a direct and proximate result of Loop's wrongful interference, Plaintiffs have suffered economic harm, including lost prospective customers, lost renewals, lost subscription revenues, and harm to prospective business relationships.

78.   Plaintiffs seek all damages available at law, including compensatory damages and punitive damages for Loop's malicious, oppressive, and fraudulent conduct.

## COUNT IV

### Unfair Competition (Cal. Bus. & Prof. Code § 17200)

79.   Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs as if fully set forth herein.

80.   California Business & Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

81.   Loop's conduct constitutes unlawful business acts and practices because, as alleged above, Loop's false and deceptive commercial communications violate Section 43(a) of the Lanham Act, California Business & Professions Code § 17500, and the California common law of trade libel, each of which constitutes an independently unlawful predicate act under the UCL.

82.   Loop's conduct also constitutes unfair business acts and practices. Loop's campaign of false and deceptive statements about Skio's post-acquisition trajectory was designed to exploit the acquisition announcement by manufacturing false uncertainty about platform stability, pricing, support, roadmap, and product capabilities at the precise moment when Skio's merchants would be most likely to act on such concerns. Loop's conduct harms competition in the subscription-commerce platform market by distorting customers' platform selection, renewal, retention, and migration decisions through false and deceptive comparative advertising.

24
COMPLAINT

83.     Loop's conduct further constitutes fraudulent business acts and practices within the meaning of the UCL because, as alleged above, the false and deceptive statements described herein are likely to deceive current and prospective customers of Skio and Recharge about the stability, features, pricing, support quality, and continuity of Plaintiffs' platforms.

84.     Plaintiffs have suffered injury in fact and lost money or property as a result of Loop's unlawful, unfair, and fraudulent business acts and practices, including lost customers, lost renewals, lost subscription revenues, and diversion of customers and prospects to Loop. Plaintiffs will continue to suffer harm absent injunctive relief.

85.     Plaintiffs are entitled to injunctive relief and restitution pursuant to California Business & Professions Code §§ 17203 and 17204.

## COUNT V

### False Advertising (Cal. Bus. & Prof. Code § 17500)

86.     Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs as if fully set forth herein.

87.     California Business & Professions Code § 17500 prohibits any person from making or disseminating any statement about goods or services that is "untrue or misleading" when the speaker knows, or by the exercise of reasonable care should know, that the statement is untrue or misleading.

88.     Loop's false advertising, including the Acquisition Banner, targeted communications, Loop Blog Post, and Skio Comparison Page constitutes advertising and commercial communications about Loop's and Plaintiffs' goods and services, disseminated to current and prospective customers for the purpose of influencing their platform selection, renewal, retention, and migration decisions.

89.     The statements described herein are false and deceptive. Loop knew, or by the exercise of reasonable care should have known, that those statements were untrue or deceptive including because:

25

COMPLAINT

(a)    Passwordless login via email is a notable Skio feature and is described on Skio's public marketing materials;

(b)    Skio and Recharge publicly confirmed that Skio would continue to operate on a standalone basis;

(c)    Loop's own blog post acknowledged Recharge's and Skio's public "no change" commitments, yet Loop continued to publish statements warning Skio merchants that they faced post-acquisition disruption; and

(d)    Loop's comparison page represented that numerous specific Skio features were unavailable when, as alleged above, they were standard or otherwise available on Skio's platform.

90.    Loop's false and deceptive statements were likely to deceive current and prospective Skio and Recharge customers because they concerned material aspects of Plaintiffs' platforms, including platform continuity, pricing, support, roadmap, and product capabilities.

91.    Plaintiffs have suffered injury in fact and lost money or property as a result of Loop's false advertising because Loop's statements were directed to current and prospective Skio and Recharge customers, concerned material issues affecting platform selection and retention decisions, and have caused harm including lost customers, lost renewals, lost subscription revenues, and diversion of customers and prospects to Loop. Plaintiffs will continue to suffer harm absent injunctive relief.

92.    Plaintiffs are entitled to injunctive relief and restitution pursuant to California Business & Professions Code § 17535.

## COUNT VI

## Trade Libel (California Law)

93.    Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs as if fully set forth herein.

26

COMPLAINT

94.   Trade libel under California law provides a cause of action for the publication of false statements of fact about another party's business, goods, or services that directly and proximately cause economic harm to that party.

95.   Loop has published written statements of fact specifically directed at Recharge's and Skio's business operations, product roadmap, pricing practices, customer support quality, and specific product capabilities. These statements include, without limitation: that Recharge will sunset Skio; that Skio customer pricing will increase post-acquisition; that Recharge's support is "slow and unresponsive" as an established matter of documented fact; that Skio does not offer passwordless login via email; and that numerous specific features of Skio's platform are unavailable when they are in fact standard.

96.   Each of Loop's challenged statements was false when made. Loop's statement that Recharge will sunset Skio was false because it directly contradicts Recharge's confirmed public position and known plans. Loop's statement that Skio customer pricing will increase post-acquisition was false because Skio and Recharge have confirmed publicly there are no plans to increase pricing. Loop's statement that Skio lacks passwordless login via email was false because Skio's platform offers that feature. Loop's statements that specific Skio platform features are unavailable were false because those features are standard or otherwise available on Skio's platform.

97.   Loop published these false statements in writing to third parties, through at least the Acquisition Banner, targeted communications, Loop Blog Post, and Skio Comparison Page.

98.   Loop published these false statements with knowledge of their falsity or with reckless disregard for their truth or falsity. Loop's own public statements confirm its knowledge of the falsity of its representations. As alleged above, the Loop Blog Post acknowledges Recharge's and Skio's public commitments that both platforms would continue operating as normal, but Loop published false statements asserting the opposite.

COMPLAINT

99. Loop published these false statements with the specific intent to cause economic harm to Skio and Recharge by diverting Skio customers and prospective customers to Loop's competing platform, and Loop was aware that disseminating false statements about a competitor to that competitor's existing customers would cause economic harm.

100. Loop knew, intended, and reasonably expected that Skio customers and prospective customers would act in reliance on Loop's false statements by terminating, declining to renew, delaying, reducing, or reconsidering their business relationships with Skio and Recharge.

101. Customers and prospective customers have and will continue to act in reliance on Loop's false statements in evaluating their subscription plan options.

102. As a direct and proximate result of Loop's false statements and the resulting customer reliance, Skio and Recharge have suffered and continue to suffer actual economic harm, including the loss of customers, lost renewals, damage to business relationships, and loss of subscription revenues and goodwill.

103. Plaintiffs' pecuniary losses include, without limitation, lost revenue from customers and prospective customers who acted in reliance on Loop's false statements.

104. Plaintiffs seek compensatory damages for their pecuniary losses and punitive damages for Loop's malicious, oppressive, and fraudulent conduct pursuant to California Civil Code § 3294. Because Loop is a corporate defendant, Plaintiffs allege that Loop's false statements were made, authorized, directed, approved, or ratified by one or more Loop officers, directors, and/or managing agents.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Jika, Inc. d/b/a Skio and Recharge LLC respectfully request that this Court enter judgment in their favor and against Defendant Loop Solutions, Inc. as follows:

COMPLAINT

1.     Issue a preliminary injunction, and permanent injunction, pursuant to 15 U.S.C. § 1116 and California Business and Professions Code §§ 17203 and 17535, enjoining Loop and its officers, agents, employees, affiliates, and all persons acting in concert with them from: (a) disseminating the false and deceptive statements described in this Complaint; (b) disseminating any false or deceptive statement about Recharge, Skio, or their products, services, pricing, features, customer support, or business trajectory; and (c) publishing or disseminating false comparative advertising targeting Recharge or Skio;

2.     Order Loop to remove, disable, delete, or cease publishing the false and deceptive advertising materials described in this Complaint, including but not limited to targeted communications, Loop Blog Post, and Skio Comparison Page;

3.     Order Loop to send corrective communications and/or publish corrective notices, in a form and manner approved by the Court, to recipients of its false and deceptive targeted communications, retracting the false statements therein and confirming that Skio continues to operate normally with no planned changes to pricing, features, support quality, or customer success assignments;

4.     Award Plaintiffs compensatory damages in an amount to be proven at trial;

5.     Disgorge Loop's profits attributable to its false and deceptive campaign pursuant to 15 U.S.C. § 1117(a) and award restitution to the extent available under California Business and Professions Code §§ 17203 and 17535;

6.     Award enhanced damages based on Loop's willful violations of the Lanham Act pursuant to 15 U.S.C. § 1117(a);

7.     Award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and applicable California law, this being an exceptional case;

8.     Award Plaintiffs punitive damages for Loop's malicious, oppressive, and fraudulent conduct pursuant to California Civil Code § 3294;

COMPLAINT

9.    Award Plaintiffs pre-judgment and post-judgment interest at the maximum rate permitted by applicable law; and

10.    Grant Plaintiffs such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs Jika, Inc. d/b/a Skio and Recharge LLC demand a trial by jury on all issues so triable.

Dated: May 22, 2026

Respectfully submitted,

SIDLEY AUSTIN LLP

By: *Randi W. Singer*____
Randi W. Singer (SBN 320587)
randi.singer@sidley.com
Elizabeth K. McLean (*pro hac vice forthcoming*)
elizabeth.mclean@sidley.com
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300

Nima H. Mohebbi (SBN 275453)
nima.mohebbi@sidley.com
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500

*Attorneys for Plaintiffs Jika, Inc. d/b/a Skio and Recharge LLC*

30
COMPLAINT